UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| **MICHAEL HANYSH, ET AL.,** | ) | CASE NO.4:11CV528 |
| | ) | |
| Plaintiff, | ) | JUDGE CHRISTOPHER A. BOYKO |
| | ) | |
| Vs. | ) | |
| | ) | |
| **BUCKEYE EXTRUSION DIES, INC.,** | ) | OPINION AND ORDER |
| | ) | |
| Defendant. | ) | |

**CHRISTOPHER A. BOYKO, J:**

This matter is before the Court on Plaintiffs Michael and JoAnne Hanysh's Motion for Summary Judgment (ECF # 12) and Defendant Buckeye Extrusion Inc.'s Motion for Summary Judgment (ECF # 11). For the following reasons, the Court denies both Defendant's and Plaintiffs' Motions.

The underlying facts in this case are not in dispute, having been stipulated to by the parties. Plaintiffs Michael and JoAnne Hanysh reside in Trumbull County, Ohio and Defendant Buckeye Extrusions, Inc. is an Ohio corporation. Michael Hanysh was an employee of Buckeye and was laid off on January 5, 2009. On January 9, 2009, Buckeye issued a letter to Hanysh informing him that he was eligible for continuing medical coverage with Anthem Blue Cross and Blue Shield Insurance Co., ("Anthem") under the Consolidated Omnibus Reconciliation Act ("COBRA"), for a period of 18 months at a premium of $1,084.44 per month. That same day, Hanysh elected to continue his coverage and timely paid the monthly premium from January 2009 through June of 2009. In July 2009, Buckeye informed Hanysh that the premiums for

1

continuing COBRA coverage increased to $1288.50. Hanysh timely paid the increased premium rate from July through December 2009. In January 2010, Buckeye informed Hanysh he did not need to pay the premium for the month due to an anticipated government payment. Hanysh subsequently paid the premium for February 2010. Around this time, Buckeye informed Hanysh that, in fact, Hanysh needed to make the premium payment for January 2010. Hanysh made the January 2010 premium payment.

Around the same time, Hanysh filed a complaint with the United State Department of Labor ("DOL"). Shortly thereafter, the DOL informed Buckeye that Buckeye was not subject to federal COBRA law because it employed less than twenty employees. On March 23, 2010, Buckeye informed Hanysh of the DOL's determination and further informed Hanysh that as a result, Hanysh's hospitalization coverage would cease April 14, 2010. Anthem retroactively terminated Hanysh's coverage effective January 14, 2010.

Plaintiff JoAnne Hanysh applied for and received Anthem Individual coverage. On May 11, 2010, Hanysh was informed by Anthem that he had the option to enroll for Anthem Individual coverage, which he declined to pursue. On May 19, 2010, Buckeye reimbursed Hanysh $7007.21 for premium payments he made. On July 10, 2010, Buckeye sent Hanysh a check for $3,865.50 and on July 1, 2010 for an additional $837.53.

The parties further stipulate that Hanysh was one of the four founders of Buckeye and served the company as President, Vice-President, and Secretary on a rotating basis from 1982 until Buckeye's subsequent sale in October 2008. Hanysh was an owner and officer of Buckeye prior to its sale, and participated in the decision to acquire Anthem coverage.

**Plaintiffs' Motion for Summary Judgment**

According to Plaintiffs' Motion for Summary Judgment, due to Plaintiffs' reliance upon Defendant's representations that they had medical coverage under COBRA, Plaintiffs incurred healthcare expenses for the months of January, February and April 2010 in the amount of $16,657.14.  Plaintiffs' have paid $5,565.14 and the Cleveland Clinic has reduced the amount owed by $9,492.00.  At present, Plaintiffs' owe $1,600.00 in unpaid medical bills.  Therefore, Plaintiffs' have incurred a total of $7,165.14 in medical expenses relying upon Defendant's misrepresentations that Plaintiffs' had medical coverage.

**Defendant's Motion for Summary Judgment**

Defendant contends it made no material misrepresentations on Plaintiff Michael Hanysh's eligibility.  Defendant informed Plaintiff he was eligible based on Anthem's representation that Hanysh was eligible.  According to Defendant, it was Anthem who was responsible for determining eligibility under the terms of Buckeye's contract with Anthem for employee health insurance.  Also, Defendant contends Michael Hanysh possessed superior knowledge of the Anthem insurance policy because Hanysh, as a former President of Buckeye's predecessor, participated in the selection of Anthem as the health insurer for Buckeye's predecessor.  The policy Hanysh bargained for in 1985 was essentially the same policy in effect when Hanysh sold the company in 2008 and throughout Hanysh's layoff.  Thus, Hanysh knew or should have known that COBRA eligibility was solely within the determination of Anthem and not Defendant.  Therefore, Hanysh unreasonably relied upon the representations of Defendant.

Defendant also contends Plaintiffs' failed to mitigate their damages by not obtaining gap coverage when notified that they were ineligible for COBRA coverage and notice that gap

coverage was available.  Defendant also contends Plaintiffs made material misrepresentations that they could not obtain insurance coverage when they were, in fact, insured, and have misrepresented the amounts of their damages.

## LAW AND ANALYSIS

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *See* Fed. R. Civ. P. 56(a).  The burden is on the moving party to conclusively show no genuine issue of material fact exists, *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Lansing Dairy, Inc. v. Espy*, 39 F.3d 1339, 1347 (6th Cir. 1994); and the court must view the facts and all inferences in the light most favorable to the nonmoving party, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  Once the movant presents evidence to meet its burden, the nonmoving party may not rest on its pleadings, but must come forward with some significant probative evidence to support its claim.  *Celotex*, 477 U.S. at 324; *Lansing Dairy*, 39 F.3d at 1347.  This Court does not have the responsibility to search the record *sua sponte* for genuine issues of material fact.  *Betkerur v. Aultman Hosp. Ass'n.*, 78 F.3d 1079, 1087 (6th Cir. 1996); *Guarino v. Brookfield Township Trs.*, 980 F.2d 399, 404-06 (6th Cir. 1992).  The burden falls upon the nonmoving party to "designate specific facts or evidence in dispute," *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986); and if the nonmoving party fails to make the necessary showing on an element upon which it has the burden of proof, the moving party is entitled to summary judgment.  *Celotex*, 477 U.S. at 323.   Whether summary judgment is appropriate depends upon "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."

*Amway Distribs. Benefits Ass'n v. Northfield Ins. Co.*, 323 F.3d 386, 390 (6th Cir. 2003) (quoting *Anderson*, 477 U.S. at 251-52).

**Equitable Estoppel**

Under applicable Sixth Circuit precedent the elements of equitable estoppel are: "1) conduct or language amounting to a representation of material fact; 2) awareness of the true facts by the party to be estopped; 3) an intention on the part of the party to be estopped that the representation be acted on, or conduct toward the party asserting the estoppel such that the latter has a right to believe that the former's conduct is so intended; 4) unawareness of the true facts by the party asserting the estoppel; and 5) detrimental and justifiable reliance by the party asserting estoppel on the representation." *Bloemker v. Laborers' Local 265 Pension Fund,* 605 F.3d 436, 442 (6th Cir.2010). "The second element requires the plaintiff to demonstrate that the defendant's actions "contain[ed] an element of fraud, either intended deception or such gross negligence as to amount to constructive fraud." *Id.* citing *Crosby v. Rohm & Haas Co.,* 480 F.3d 423, 431 (6th Cir.2007).

"A mistake may show negligence, but does not reach to 'affirmative misconduct' required for estoppel." *Ashcraft v. Shenango Furnace Co.,* 56 F.Supp.2d 895, 905 (N.D.Ohio,1999), *citing Shah v. Immigration and Naturalization Service,* 60 F.3d 829 (TABLE), 1995 WL 399071, *4 (6th Cir.1995); *see also Wille v. City of Moraine,* 1996 WL 1061506, *28 (S.D.Ohio 1996) (stating "mistake does not provide a basis for the application of equitable estoppel").

There is no dispute among the parties that Plaintiffs can demonstrate elements one and three of their equitable estoppel claims. The parties dispute elements two, four, and five regarding Defendant's knowledge of the true facts, Plaintiffs' unawareness of the true facts and

5

reliance on the alleged misrepresentations.

Based on the stipulated facts, it is clear that there was no intentional fraudulent or deceptive misrepresentation by Defendant.  Both Plaintiffs and Defendant regarded Plaintiffs as covered under COBRA for at least twelve months.  It is undisputed that an outside agency, i.e.- the Department of Labor ("DOL")- first informed all parties that Plaintiffs were not covered.  Up until that time, Defendant informed Plaintiffs they were eligible and informed them periodically of premium increases.  It was only after Plaintiffs complained to the Department of Labor that Defendant was subsequently informed Plaintiffs were not covered under COBRA.  Upon notice by the DOL, Defendant promptly informed Plaintiffs and reimbursed them for funds Plaintiffs' expended.

However, the inquiry does not end with a determination that no fraudulent or deceptive misrepresentation occurred.  While the Sixth Circuit has held there must be an element of fraud or deception in the misrepresentation, which this Court holds is not present, the Sixth Circuit has also held the second element may be satisfied by demonstrating gross negligence amounting to constructive fraud.

"Gross negligence under Ohio law is defined as the 'failure to exercise any or very slight care" or "a failure to exercise even that care which a careless person would use.'" *Wright v. County of Franklin*, Ohio 2012 WL 3060929, 20 (S.D.Ohio) (S.D.Ohio,2012) *quoting Thompson Elec. ., Inc. v. Bank One, Akron, N.A.,* 37 Ohio St.3d 259, 265 (1988).  "Constructive fraud may be found from the relation of the parties to a transaction, or from circumstances and surroundings under which it takes place." *Ohio Bureau of Workers' Compensation v. MDL Active Duration Fund, Ltd.* 476 F.Supp.2d 809, 823 (S.D.Ohio,2007) citing *Hanes v. Giambrone,* 14 Ohio

App.3d 400, 406 (1984); *Lake Hiawatha Park Ass'n v. Knox County Agricultural Soc.,* 28 Ohio App. 289, 291 (1927). "Constructive fraud does not require fraudulent intent." *Wright*, at 20, citing *Lake Hiawatha,* 28 Ohio App. at 291. "Constructive frauds are therefore assumed to have been committed by acts without regard to motive." *Id.* citing *Hanes,* 14 Ohio App.3d at 406. The Sixth Circuit has defined constructive fraud as follows:

> "Constructive fraud is a breach of legal or equitable duty which, in spite of the fact that there is no moral guilt resulting from the breach of duty, the law declares fraudulent because of its tendency to deceive others, to violate public or private confidence, or to injure public interests. Constructive fraud may be found merely from the relation of the parties to a transaction or from circumstances and surroundings under which it takes place. It is said that constructive fraud is a term that means, essentially, nothing more than the receipt and retention of unmerited benefits."

*U.S. v. Lichota* 351 F.2d 81, 90 (6th Cir. 1965)

Given the stipulated facts of this case, and construing the facts and inferences in favor of the non-movant, the trier of fact could determine that Defendant's misrepresentation that Plaintiffs were eligible for COBRA coverage rises to the level of gross negligence. The number of persons employed by Defendant was solely within Defendant's knowledge. Coupled with the importance of health care coverage and the employers unique relationship with an employee (or ex-employee in the context of COBRA) in providing coverage under the employer's health plan, the consequences of a mistake are potentially catastrophic to an unemployed individual who reasonably relies on the employer's representation.

The plain language of Defendant's insurance contract with Anthem places the responsibility for complying with federal and state law squarely upon Defendant (Art. 5F). Defendant is also responsible for communicating with employees about their eligibility. (Art 3J, 5D). Under the terms of the contract, Anthem expressly disclaims any warranties or

7

representations that the Defendant's health plan complies with state and federal laws.  As the stipulated facts represent, it was Defendant who represented to Plaintiffs that they were eligible for COBRA coverage for eighteen months.  It was Defendant who received the communication from the DOL that Defendant was not subject to the requirements of federal COBRA.  It was Defendant who notified Plaintiffs that they were not eligible for federal COBRA coverage in a letter dated March 23, 2010.  The letter further informed Plaintiffs their hospitalization would end April 14, 2010.

The Court also notes that in a letter to the DOL dated March 4, 2010, Defendant informed DOL it had only fourteen employees.  Thus, Defendant was aware, prior to being informed by the DOL on March 23, 2010, that it had less then twenty employees.

Based on the above, the Court holds that Defendant's argument that it was Anthem and not Defendant that determined eligibility does not preclude Plaintiff's claim for equitable estoppel.  It was Defendant who made the misrepresentations, therefore, it is Defendant who may be estopped from denying coverage.

The Court also holds that Plaintiffs' knowledge of the terms of the Anthem insurance policy does not preclude recovery.  As discussed above, the policy requires Defendant comply with federal and state law and requires Defendant communicate with employees on the eligibility for coverage under the employer's health plan.  Also, Defendant possessed the knowledge on the numbers of employees it had; Plaintiff would not have been privy to such knowledge.  As the parties stipulated, it was on the basis of the number of employees that DOL informed Defendant it was not subject to federal COBRA requirements.  Thus, Plaintiffs' could not have known the true facts.

Finally, there are genuine issues of fact as to the amount of damages Plaintiffs incurred and their duty to mitigate damages, precluding summary judgment for either party on these issues. The parties do not dispute Plaintiffs were offered continuation coverage that would have run from the time their COBRA coverage ended, thus ensuring no gap in coverage. Michael Hanysh decided not to purchase such coverage. According to Hanysh, the reason he declined the coverage was due to the high premium and deductible. While there exists a duty to mitigate damages under COBRA, that duty exists so long as it does not present an "undue risk, burden or humiliation" on the party who possesses the duty to mitigate. See *Holford v. Exhibit Design Consultants* 218 F.Supp.2d 901, 907 (W.D.Mich.,2002) citing *Hamilton v. Mecca Inc.*, 930 F.Supp. 1540, 1555 (S.D.Ga.1996). The Court holds that it is for the trier of fact to determine whether Plaintiffs' decision to decline continuation coverage constitutes a failure to mitigate.

Therefore, for the foregoing reasons, the Court denies both movants' Motions for Summary Judgment.

The Court further orders Plaintiff to show cause why they are entitled to a trial by jury as demanded in their Complaint. Plaintiffs' brief shall be limited to no more than five pages and shall be filed no later than September 14, 2012.

IT IS SO ORDERED.

s/ Christopher A. Boyko
CHRISTOPHER A. BOYKO
United States District Judge

Dated: September 5, 2012